IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GARY RAY CLARK, SR., | ) |
| | ) No. 4:16-cv-00021-SMR-RAW |
| Petitioner, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter was referred to the undersigned for further proceedings, including a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned conducted an evidentiary and has now reviewed all filings by the parties and the relevant parts of the criminal docket. For the reasons that follow, the undersigned recommends the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be denied.[1]

**I.   PROCEDURAL HISTORY**

Gary Ray Clark, Sr. pleaded guilty to one count of failure to register with the sex offender registry in violation of 18 U.S.C. § 2250 (a) and was sentenced to 24 months in prison to be followed by 5 years of supervised release. *United States v. Clark*, 1:14-cr-00041-SMR (S.D. Iowa)("Crim. Case"), J. 1-2, ECF No. 44. Clark did not appeal. He has discharged his prison sentence but remains on supervised release. On January 20, 2016 Clark brought this Motion to

---

[1] This Report and Recommendation contains citations to three transcripts. "Plea Tr." refers to the transcript of the plea proceeding in Crim. Case, ECF No. 30. "Sent. Tr." refers to the transcript of the sentencing proceeding in Crim. Case, ECF No. 46. "Hearing Tr." refers to the transcript of the hearing in this § 2255 case, ECF No. 22.

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, pro se. Counsel, Mr. Kevin Hobbs, was appointed to represent Clark. On March 22, 2017, the undersigned held an evidentiary hearing on the motion. Clark attended the hearing in person with his attorney. The Government was represented by Assistant U.S. Attorney Mary Luxa. Also in attendance was Assistant Federal Public Defender Michael Smart, Clark's counsel in his criminal case.

## II. DISCUSSION OF CLAIMS

As clarified at the evidentiary hearing, Clark alleges Smart was ineffective in the following ways: (1) failing to file a motion to suppress; (2) failing to challenge delay in conducting, or the absence of, a preliminary hearing; (3) failing to challenge the lack of a detention hearing; (4) failing to challenge the lack of notice to Clark of the charge against him; and (5) failing to file an appeal. Apart from ineffective assistance of counsel, Clark also argues the lack of a preliminary hearing, detention hearing and failure to inform him of the charge are independent grounds for relief. Finally, Clark contends his counsel influenced and manipulated him to plead guilty, and his plea was not knowing and voluntary because of pain he was experiencing at the time. The first four enumerated grounds, whether as independent or ineffective assistance claims, are waived if Clark's guilty plea is valid. *See infra* at 7. Notwithstanding the waiver issue, the Court will address all of the issues presented by Clark.

In general, to establish a claim of ineffective assistance, a defendant must show counsel's performance was professionally unreasonable and a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) (ineffective assistance of counsel standard). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

2

694. "In order to satisfy the prejudice prong of the *Strickland* test in the guilty plea context, a defendant must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### A. Motion to Suppress[2]

Authorities arrested Clark at his apartment on August 29, 2014. Clark alleges he was not shown a warrant but the authorities entered unannounced, took photographs, obtained DNA evidence from his mouth, and removed documents from his apartment. Addendum of Facts at 1-2, ECF No. 1-1. Clark argues Smart should have filed a motion to suppress evidence seized by law enforcement officials when they searched his apartment.

"Where counsel's failure to competently litigate a suppression issue is the focus of the ineffective-assistance claim, to demonstrate prejudice, the petitioner must 'also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

The record reflects an arrest warrant was issued on August 28, 2014, and executed on August 29, 2014. *See* Warrant Return, Crim. Case, ECF No. 5. As to Clark's complaint about a search of his person and residence, there is no evidence in the record about a search, the attendant

---

[2] In his motion, Clark uses language to suggest he intended to raise this as an independent claim. Although "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

3

circumstances, or the materiality of anything seized. *See* Hearing Tr. at 13.[3] Attorney Smart testified he did not believe there were any grounds to file a motion to suppress. *Id.* at 33. Without a showing of excludable evidence or a basis to question Smart's decision, there is no occasion to find deficient performance or prejudice.

### B. No Probable Cause/Preliminary Hearing

On August 28, 2014, a federal grand jury in the Southern District of Iowa returned an indictment charging Clark with failure to register as a sex offender. Redacted Indictment, Crim. Case, ECF No. 2. The next day, Clark was arrested and appeared before Magistrate Judge Celeste F. Bremer via video for an initial appearance and arraignment. Minute Entry, *id.*, ECF No. 8. Clark argues he was held wrongfully more than 72 hours without a hearing to show probable cause, and counsel was ineffective for failing to make this challenge.

In general, a magistrate judge is required to conduct a preliminary hearing unless "the defendant is indicted." Fed. R. Crim. P. 5.1(a)(2) (listing exceptions to holding preliminary hearing); *see also United States v. Rose*, 541 F.2d 750, 753 n.2 (8th Cir. 1976).

As the indictment already determined probable cause to charge Clark, he was not entitled to a preliminary hearing. His counsel, therefore, was not ineffective for failing to make a meritless argument to the Court. *See Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994) ("Dyer's claims of ineffective assistance of counsel fail because we have just rejected as meritless the claim Dyer asserts counsel should have pursued."); *see also Graves v. Ault*, 614 F.3d 501, 507

---

[3] The Court's record shows a search warrant for Clark's residence at 608 1/2 Mill Street in Council Bluffs was executed by U.S. Marshals on August 29, 2014, presumably at the time of Clark's arrest. The search was for indicia of residence. Case No. 14-mj-00026-CFB-1. The warrant papers remain sealed.

4

(8th Cir. 2010) ("[T]rial counsel could not have been ineffective for failing to raise a state law claim with no merit.") (citing *Dyer*, 23 F.3d at 1426).

C.  **Knowledge of Charges**

As the Court understands it, Clark claims he was denied his right to be informed of the charge against him and to have a copy of the indictment. Clark initially appeared and was arraigned the day of his arrest, August 29, 2014. Smart was present with Clark. The minutes of these proceedings indicate Clark was advised of the charge against him and he waived reading of the indictment. *See* Minute Entry, Crim. Case, ECF Nos. 8, 9. Smart testified Clark would have been provided with the indictment at the initial appearance, and that his practice was to print out a copy of the indictment and to "always" go over the indictment with his client when he first meets with the client to prepare a financial affidavit. Hearing Tr. at 35. Clark signed his financial affidavit for appointed counsel on August 29, 2014 and it was presented at his initial appearance and arraignment. Financial Affidavit, Crim. Case, ECF No. 7. Clark's testimony did not directly refute any of this. He testified only, when asked about his guilty plea, that "I had to go through my girlfriend to obtain the information that I was indicted out of Des Moines." *Id.* at 16. Smart's testimony is consistent with the minutes of the initial appearance and arraignment. Under the procedures in this district it would be quite extraordinary for a defendant not to have been informed of the charge against him or not to have received a copy of the indictment at arraignment. There is no credible evidence these omissions occurred and, it follows, Smart was not ineffective for failing to raise the matter.

## D.  Detention Hearing

The government moved to detain Clark at his initial appearance. Minute Entry, Crim. Case, ECF No. 8. Detention hearing was set for September 4, 2014. *Id.* The hearing was continued twice at Clark's request to permit Smart to formulate a feasible release plan. Minute Entries, Crim. Case, ECF Nos. 17, 18, 20. Because of his criminal history Iowa law placed exclusion zone limitations on where Clark could live. Hearing Tr. at 35-36. Detention hearing was held on September 18 by which time a release plan had been arranged under which Clark would reside at a local motel. The government withdrew its motion for detention and the Court ordered Clark would be released on conditions of release. Minute Entry, Crim. Case, ECF No. 21. The same day, shortly after the detention hearing, the Court was advised by counsel that there was a problem with putting the release plan in place. Clark could not afford the motel's weekly rates. Clark's girlfriend had used his cash card to deplete his available funds. Hearing Tr. at 36. The Court ordered defendant would remain detained until further order and that a detention hearing would promptly be set at his request. Order, Crim. Case, ECF No. 23. Thus, at his scheduled detention hearing Clark was released on conditions which included a residency requirement which it became immediately apparent was unavailable to him. Unable to comply with the residency condition of his release, Clark remained detained.

Smart was not deficient in failing to insist upon a further detention hearing after Clark's release plan fell through. Nor was Clark prejudiced. Given his criminal history and the nature of the offense charged, it is highly unlikely Clark would have been released until there was a suitable place for him to lawfully reside. Smart attempted to locate such a place and negotiated the

government's agreement to release on conditions when it was thought such a place had been located. Clark presents no evidence to show his detention affected his decision to plead guilty.

E. **Knowing and Voluntary Guilty Plea**

Clark was convicted of first degree sexual assault in 1987 in Nebraska, and as a result he was required to maintain registration in the Nebraska sex offender registry, or if residing in another state, to register in the state of his new residence. *See* Plea Tr. at 30-31. On October 2, 2014, Clark pleaded guilty before the undersigned and a Report and Recommendation was issued recommending acceptance of the plea. Crim. Case ECF Nos. 24, 26. On November 25, 2014 District Judge Rose accepted the plea. *Id.* ECF No. 36.

In general, "a valid guilty plea is an admission of guilt that waives all non-jurisdictional defects and defenses." *United States v. Frook*, 616 F.3d 773, 774 (8th Cir. 2010) (quoting *United States v. Limley*, 510 F.3d 825, 827 (8th Cir. 2007)). The guilty plea is not "invulnerable to collateral attack," but "the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (further citations omitted)). A plea agreement is not knowing and voluntary "when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.'" *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (further citations omitted). Despite Clark's protestations now in this Section 2255 motion, the record demonstrates that Clark's plea was knowing and voluntary.

The Court first reviews Clark's allegations regarding pain. Clark suffers from severe osteoarthritis. *See* Hearing Tr. at 10. He maintains his guilty plea was not knowing and voluntary because he had constant pain, was not able to think well, and it affected his ability to make decisions. *Id*. at 12 ("I was under constant pain. It was–you know, you can't think very well when you're trying to concentrate on moving around, trying to avoid the pain.").

Prior to his arrest, Clark had been taking hydrocodone for arthritis pain but was given only ibuprofen at the jail. Plea Tr. at 11; *see also* Movant's Exhibit 1, ECF No. 15-1 (medication list for Clark). Clark testified under oath at the plea proceeding that while he was experiencing pain from his arthritis, he was able to focus on the proceeding, understand the process, and could make an important decision. Plea Tr. at 11-12. The Court told Clark "if that pain was such that it makes it difficult for you to think or if it is distracting you, if it was such a bother that you didn't think you could make an important decision, I'd want to know that." Plea Tr. at 12. Clark said he understood. *Id.* Later in the proceeding Clark testified his decision to plead guilty was voluntary, of his own free will. *Id.* at 43. He said he understood all of the Court's questions and had answered them truthfully. *Id.* at 43-44. In his hearing testimony he now says all of this was not "accurate." Hearing Tr. at 31. Clark's admission that he was not truthful with the Court in the plea proceeding severely undercuts the credibility of what he now has to say.

Smart's notes indicate he met with Clark "in person at least five times prior to entry of the guilty plea." Hearing Tr. at 37. Clark never told Smart he was in so much pain that he could not understand what they talked about and in his conversations with him Smart never had that impression. *Id*. Smart testified Clark appeared "to understand the nature and consequences of his actions and what would result if he pled guilty." *Id.* at 39. At the conclusion of the plea proceeding

8

the Court found Clark's decision to plead guilty was voluntarily, knowingly and intelligently made, a finding which would not have been made had Clark exhibited any indication he was distracted by pain from entering an informed plea. The Court finds Clark's plea was not involuntary or unknowing because arthritic pain prevented him from thinking clearly at the time of entry of the plea.

The Court also does not find credible Clark's assertion that Smart improperly influenced or manipulated his decision to plead guilty. Clark testified the basis for this claim was that just before the plea proceeding Smart put documents on the table for him to sign, which Clark thought was an agreement to change his plea, documents he did not have a chance to read. Hearing Tr. at 26. There was no plea agreement. The only document Clark would have signed was a form notice of his intent to plead guilty and consent to have the plea taken by a magistrate judge, a document which at the outset of the plea proceeding Clark said he had read and understood before signing. Plea Tr. at 3; *see* Crim. Case ECF No. 25.

During the course of the plea proceeding Clark acknowledged he had the right to a jury trial and was not required to plead guilty. Plea Tr. at 6. He was told if he changed his mind and no longer wanted to plead guilty, "simply let me know that, I'll stop and not go any further." *Id.* at 6-7. When asked if he was satisfied with the services of attorney Smart, Clark replied affirmatively. *Id.* at 13-14. Clark acknowledged he and Smart had thoroughly discussed the case and reviewed the evidence sufficiently to understand what evidence the government had against him. *Id.* at 15. Finally, Clark denied he had been threatened, forced or pressured in any way to plead guilty, and as noted above, affirmed his decision to plead guilty was a decision made voluntarily of his own

free will. *Id.* at 43. All of this is against any claim that Clark's guilty plea was improperly influenced or manipulated by his attorney.

It is not entirely clear whether he means it as a stand-alone attack on the guilty plea, or further evidence of Smart's manipulation, but Clark argues his plea was unknowing because he did not know he had to register as a sex offender in Iowa. *See* Hearing Tr. at 15. In the factual basis component of the plea colloquy, Clark agreed he was convicted in 1987 of first degree sexual assault in Nebraska. Plea Tr. at 30. He also acknowledged that upon release from prison he received and signed a document informing him that if he lived in another state, he was required to register in the state of his new residence. *Id.* at 31. Clark admitted he should have known he had to register in Iowa, but initially stopped short of admitting he knew he had to register, stating he "thought it was all in Nebraska." *Id.* at 32-33. "Knowingly" failing to register is an element of the offense. After conferring with Smart in two off-record discussions during which Clark was shown documents he signed after leaving prison in 2000 and again in 2007 (after serving a Nebraska prison sentence for failure to register) which informed him of his registration responsibilities if he moved to another state, Clark conceded he knew he was supposed to register in Iowa but, through answers to questions put by Smart, suggested he did not register in Nebraska or Iowa following his release from prison in 2007 because he believed he was wrongfully convicted of the original sex assault offense and did not think it was fair to require him to register. *Id.* at 33-40. The plea proceeding established a factual basis on the element of knowledge.

On October 16, 2014, Clark filed a pro se objection to the Report and Recommendation that his plea of guilty be accepted. Objections, Crim. Case, ECF No. 28. Smart met with Clark on October 24, 2014. They discussed the reasons why Clark had been detained and Clark's anger

about the original sexual assault conviction. Hearing Tr. at 41. After Smart explained there was no longer a way to challenge that conviction, Clark said he no longer wished to withdraw his guilty plea. *Id.* at 41.

Smart met with Clark again on November 3, 2014. Clark had changed his mind and said he wanted to withdraw his guilty plea. Hearing Tr. at 41. Clark asked for proof of the Nebraska sex abuse conviction. Smart had obtained and showed Clark copies of the Nebraska jury verdict, judgment and committal order. Smart testified that after inspecting the documents Clark told him (Smart) that he did not want to withdraw his guilty plea. *Id.*

Judge Rose held a status hearing on November 21, 2014 to address Clark's objections to the Report and Recommendation. Status Conf. Minute Entry, Crim. Case, ECF No. 35. The minutes from that proceeding reflect "[a]fter inquiring with the court defendant no longer desires to withdraw his guilty plea and no longer objects to the report and recommendation concerning his plea of guilty." *Id.* Judge Rose then accepted Clark's guilty plea.

The two post-plea meetings between Clark and Smart, and Clark's statements to Judge Rose that he no longer desired to withdraw his plea of guilty and had no objection to its acceptance are further indications that his plea of guilty was knowing, voluntary, and entirely valid.

### F. Failure to File Appeal

Clark was sentenced on January 16, 2015. He claims that immediately after sentencing, while still in the courtroom, he told Smart and said on the record he wished to appeal. *See* Hearing Tr. at 18, 28. Clarks says Smart responded by turning the microphone off and telling him "you don't want to appeal where there's an abuse of discretion." *Id.* at 18.

11

"Failure to file an appeal at a client's request is ineffective assistance of counsel for the purposes of § 2255. While actual prejudice is not required, the attorney must have been aware of the client's desire to appeal. A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (all internal citations and quotations omitted). "[T]he defendant must show that he manifestly 'instructed [his] counsel to file an appeal.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014)(quoting *Barger v. United States*, 204 F.3d 1080, 1082 (8th Cir. 2000)) (bracket original to *Walking Eagle*).

First, the Court does not find it credible that Clark directed Smart to appeal at the conclusion of the sentencing proceeding. Smart denied this occurred, Hearing Tr. at 41, though it is possible he and Clark discussed the subject of an appeal on the date of sentencing. Smart does not recall and his notes give no indication. *Id.* at 52. The sentencing transcript does not reflect Clark made any statement about an appeal. What it does show is that just before adjourning the sentencing proceeding, Judge Rose reviewed Clark's appeal rights, urging him to make his intentions known to Smart. Sent. Tr. at 22. The Court stated:

> What is very important is that Mr. Smart know for sure what you want, and a lot of times defendants are certain they told their lawyer one thing, the lawyer is certain they heard something else, and years down the road we're having a fight about what was said and what was meant.
> The safest thing for you to do is put it in writing, and it can be as simple as, "I do," or, "I do not want to appeal." You sign it and date it and give it to Mr. Smart, and he'll have that to protect both of you in the future about what you want.
> I know you've not been shy with communicating with Mr. Smart or with me when you needed to. You don't have to do this, but it is really the best way to protect both you and Mr. Smart down the road.

*Id.* Clark did not respond.

12

> Smart testified he and Clark met again on January 21, 2015. According to Smart:
>
>> [Clark] was very angry at that time. He wanted me to file a motion to reconsider sentencing. I told him that there was no such motion in the federal system and I explained the appeal process to him. I told him at that time an appeal would almost certainly not be successful because the judge had discretion to sentence within the range that she did and he received the low end of the guidelines. The appellate court will only review a sentence like that for abuse of discretion.
>>
>> His statement to me was we've gone far enough with this already. I made it very clear with him at that time that he was not asking me to appeal. He indicated that that was correct. He did ask for return of his property and a certified copy of his judgment and committal order. I then after that conversation, I did draft a letter to the client confirming that he didn't wish to appeal, and I advised him that if he changed his mind and wanted to appeal, he needed to notify me immediately.

Hearing Tr. at 41-42.

The same day, Smart sent a letter to Clark memorializing their conversation. *See* Gov't Exhibit A, ECF No 13-1 (letter from Smart to Clark dated January 21, 2015). The letter states in part:

> This will also confirm that we discussed whether you wished to appeal. I informed you that the judge sentenced you at the low end of the recommended guideline range. The court of appeals reviews a judge's sentence for an abuse of discretion. Because the judge sentenced you within the guideline range, the sentence imposed was clearly within her discretion. In my view, there is no basis for an appeal. When I explained that to you, you indicated that you do not wish to appeal. If for any reason you change your mind, you need to let me know before January 29, 2015, that is that last day you can appeal.

*Id.* Clark testified he received the letter, Hearing Tr. at 18-19, though he may not have received it before the appeal deadline if the Marshals Service transferred him from Council Bluffs to Des Moines before receipt of the letter. *Id.* at 43. Clark did not respond to the letter.

The only evidence that Clark directed Smart to file an appeal is his own bare assertion made one year after his sentencing. Clark did not, as the Court had urged him, make an appeal request in writing. He had not, as the Court at the same time observed, been shy about

13

communicating with the Court and Smart. Clark did not respond to Smart's January 21 letter as it is reasonable to expect he would have if he thought he had told Smart to appeal. The Court finds more credible Smart's testimony about what passed between him and Clark on January 21 and that the letter Smart wrote that day accurately summarizes their conversation about an appeal. The record does not establish that Clark instructed Smart to file an appeal.

### III.   RECOMMENDATION AND ORDER

For the reasons stated above, the undersigned concludes Clark has not shown counsel provided constitutionally ineffective assistance in any respect, and Clark has not demonstrated he is in custody under a judgment that violates the Constitution or any law of the United States, that the Court lacked jurisdiction to enter the judgment against him, that the sentence exceeded the maximum authorized by law, or that the judgment and sentence are otherwise subject to collateral review. *See* 28 U.S.C. § 2255(a), (b). The undersigned RESPECTFULLY RECOMMENDS that the Motion to Vacate, Set Aside, or Correct Movant's Sentence pursuant to 28 U.S.C. § 2255 be denied and the case be dismissed.

IT IS ORDERED that the parties have until **May 10, 2017** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*,

474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

**IT IS SO ORDERED**.

Dated this 19th day of April, 2017.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE